**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

**v.**

**Larry Eugene BUCKALLEW,**
**Defendant–Appellant.**

**No. 91SA356.**

Supreme Court of Colorado,
En Banc.

March 15, 1993.

Rehearing Denied April 12, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Deborah Isenberg Pratt, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Darol C. Biddle, Pueblo, for defendant-appellant.

Chief Justice ROVIRA delivered the Opinion of the Court.

A jury convicted the defendant, the Pueblo County Sheriff, of one count of issuing a false certificate regarding Gary Perko in violation of section 18–8–406, 8B C.R.S. (1986). This charge arose from an order placed with GSI, Inc. on behalf of "deputies" Aaron G. Ghini, Frederick L. Mosher, and Gary Perko for Steyr AUG semi-automatic rifles. In conformity with an agreement entered into between GSI and federal authorities, a certificate written on Pueblo County Sheriff's stationery and signed by defendant was attached to the purchase order. The certificate reads as follows:

CERTIFICATION OF SUPERVISORY LAW ENFORCEMENT OFFICIAL

To the Director, Bureau of Alcohol, Tobacco, and Firearms, I hereby certify as follows:

Deputy Gary Perko is a law enforcement deputy for this department who is authorized to carry a firearm in connection with his official duties. Deputy Perko is authorized to carry and use personally owned firearms in the performance of his official duties, and the firearm being purchased is for the performance of his official duties.

I am familiar with the circumstances surrounding the purchase of a STEYR AUG–SA by Deputy Perko. I am satisfied that the firearm is suitable for use in connection with official duties. I have been advised and assured that the firearm is in fact being purchased for use in connection with official duties and not for the purpose of transfer or resale. It is the policy of the department that deputies may carry and use personally owned firearms in connection with their official duties. Attached hereto is a copy of any written law, regulation or guidelines (to the extent such law, regulation,

or guidelines exist in written form) requiring, authorizing or permitting the use of personally owned firearms in connection with official duties.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 8, 1990.

/s/

Larry E. Buckallew

Sheriff

Perko was not a law enforcement deputy who was authorized to carry firearms in connection with his official duties. He was employed at the Pueblo County Sheriff's Department in the detention bureau, and because his duties did not authorize him to carry firearms he was issued a "limited commission" as a deputy sheriff. In this capacity he was given no responsibilities which required him to use a weapon.

## I

[redacted] The defendant argues that the statute under which he was charged and convicted, § 18–8–406, 8B C.R.S. (1986), as applied to a county sheriff is void for vagueness and overbreadth.[1] Section 18–8–406 deals with the issuance of false certificates and provides:

> A person commits a class 6 felony, if, being a public servant authorized by law to make and issue official certificates or other official written instruments, he makes and issues such an instrument containing a statement which he knows to be false.

[redacted] It is well settled that "[w]hen reviewing a statute upon a challenge of unconstitutionality due to vagueness, the duty of the reviewing court is to construe the statute so as to uphold its constitutionality whenever a reasonable and practical construction may be applied to the statute." *People v. Beruman,* 638 P.2d 789, 792 (Colo.1982). *See R & F Enters., Inc. v. Board of County Comm'rs,* 199 Colo. 137, 606 P.2d 64 (1980). Additionally, "[a] statute is presumed to be constitutional, and one who challenges its constitutionality must prove its invalidity beyond a reasonable doubt." *Beruman,* 638 P.2d at 792. *See People v. Lorio,* 190 Colo. 373, 546 P.2d 1254 (1976).

[redacted] Due process of law requires that a criminal statute be reasonably specific. This requirement, that terms of a penal statute

> must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*Memorial Trusts v. Beery,* 144 Colo. 448, 455–56, 356 P.2d 884, 888 (1960). This rule is premised on notions of fundamental fairness because if there is no reasonably ascertainable standard of guilt "the criminal process may lie open to whim and caprice which is abhorrent to our system of fair play and justice." *People v. Heckard,* 164 Colo. 19, 22, 431 P.2d 1014, 1015 (1967). A statute which fails to give this fair notice of the proscribed conduct violates due process of law. *See People v. Ro'mar,* 192 Colo. 428, 559 P.2d 710 (1977).

[redacted] The defendant argues that section 18–8–406 is vague because the statute contains no definition of the phrase "authorized by law." However, as we have noted in the past, a criminal statute does not need to contain a precise definition of every word or phrase constituting an element of the crime. *See People v. Schoondermark,* 699 P.2d 411, 416 (Colo.1985); *People v. Castro,* 657 P.2d 932, 939 (Colo.1983).

1. Because the constitutionality of a statute is at issue in this appeal the court of appeals lacks jurisdiction, and this court has original appellate jurisdiction. *Compare* § 13–4–102(1)(b), 6A C.R.S. (1987) (court of appeals has no jurisdiction where constitutionality of statute at issue) *with* § 13–4–102(1)(b), 6A C.R.S. (1992 Supp.) (for appeals taken after July 1, 1992, the court of appeals has no jurisdiction over cases in which statute is declared unconstitutional).

Here, a readily ascertainable standard by which one's conduct can be measured is present. A public servant is authorized by law to perform particular acts if there is a legislative enactment, a legally adopted administrative rule or regulation, or a judicial pronouncement which defines his duties. *See People v. Beruman*, 638 P.2d 789, 793 (Colo.1982) (construing phrase "duty imposed upon him by law" not to be unconstitutionally vague). Moreover, a county official is "authorized by law" to perform any other acts necessary to carry out these express responsibilities. *See Douglass v. Kelton*, 199 Colo. 446, 610 P.2d 1067 (Colo.1980). We conclude, therefore, that the defendant has failed to carry his burden of establishing invalidity beyond a reasonable doubt.

We also reject defendant's argument that the statute is overbroad. A statute is overbroad if, although ostensibly designed to punish activities which are not constitutionally protected, it infringes upon the enjoyment of protected fundamental rights by encompassing those activities within its prohibition, even though the unprotected activities might have been properly punished under a more carefully drawn statute. *People v. Becker*, 759 P.2d 26, 29 (Colo.1988); *City of Lakewood v. Pillow*, 180 Colo. 20, 23–24, 501 P.2d 744, 745 (Colo.1972). Where fundamental freedoms are not implicated, a statute passes constitutional muster if it is reasonably related to a legitimate governmental interest. *Becker*, 759 P.2d at 29. The defendant has failed to show that the statute infringes upon any fundamental freedom. Here, it is self-evident that the statute is reasonably related to the legitimate governmental interest in protecting the public from the issuance of false documents by public officials. Accordingly, the statute is not overbroad.

II

Defendant next argues that section 18–8–406 does not apply to a county sheriff because a sheriff is not a public servant "authorized by law" to issue official certificates. As noted above, section 18–8–406 makes it a crime for a "public servant authorized by law to make and issue official certificates or other official written instruments," to make and issue "such an instrument containing a statement which [the public servant] knows to be false." The defendant is clearly a public servant. *See* § 18–8–101(3), 8B C.R.S. (1986) ("public servant" means an officer or employee of government whether elected or appointed). Thus, the issue is whether the defendant is "authorized by law" to make and issue official certificates. Although a sheriff's authority is generally created by legislative enactment, a sheriff also has those implied powers which are reasonably necessary to execute those express powers. *Douglass v. Kelton*, 199 Colo. 446, 610 P.2d 1067 (1980). The test for determining whether a power is implicit within a sheriff's express authority is whether or not the sheriff can fully perform his functions without the implied power. Section 30–10–510, 12A C.R.S. (1986), requires that the sheriff's appointment and revocation of deputies be made in writing and filed with the county clerk and recorder. Obviously, this obligation cannot be carried out without making an official written instrument. Additionally, numerous duties of a sheriff carry with them the implicit responsibility to make some kind of contemporaneous, official written record or document; for example, the sheriff's bond, *see* § 30–10–501, 12A C.R.S. (1986), and the issuance of permits to carry concealed weapons, *see id.* § 30–10–523.

It is clear that a sheriff cannot fully perform his functions without the implied power to make official certificates. As such, he is "authorized by law to make and issue official certificates," and falls within the ambit of the statute.

III

The grand jury returned the following bill of indictment for count three, the count for which the defendant was convicted:

On or about the 8th day of February, 1990, Larry Eugene Buckallew, a public servant, the elected Sheriff of Pueblo County, Colorado, authorized by law to

make and issue official certificates and other official written instruments, did unlawfully and feloniously make and issue such an instrument, to wit: a written certification on official stationery of the Pueblo County Sheriff's Office, which on it's [sic] face stated that it was a certification under the penalty of perjury. Said certificate falsely stated the position and authority of Gary Perko to allow Gary Perko to obtain federally restricted assault weapons. Larry Eugene Buckallew, knowing that said certification was false, submitted the false certificate to the Director of Alcohol, Tobacco and Firearms, a federal agency, so that weapons could be purchased by Gary Perko, the issuance of said false certification being an unlawful, felonious act in the State of Colorado in violation of C.R.S. § 18–8–406, as amended, Issuing a False Certificate.

A criminal indictment by a grand jury serves two essential purposes. First, the indictment must give the defendant sufficient notice of the crime that has allegedly been committed so that a defense may be prepared. Second, the indictment must define the acts which constitute the crime with sufficient definiteness so that the defendant may plead the resolution of the indictment as a bar to subsequent proceedings. *People v. Xericos*, 186 Colo. 21, 525 P.2d 415 (1974). "To accomplish these purposes the indictment must clearly state the essential facts which constitute the offense. Fundamental fairness requires no less." *People v. Tucker*, 631 P.2d 162, 163 (Colo.1981). *See People v. Donachy*, 196 Colo. 289, 291, 586 P.2d 14, 15–16 (1978). These requirements have been codified in Crim.P. 7(a)(2) which states: "Every indictment of the grand jury shall state the crime charged and essential facts which constitute the offense."

The defendant raises several issues regarding the sufficiency of count three. We shall address each in turn. First, defendant argues that count three of the indictment failed to charge an offense because it did not specify the source of his alleged authority to issue official certificates. However, there is no need for the indictment to set forth the source of defendant's authority as long as the duty to refrain from engaging in the prohibited conduct is clear from the count. Here, that duty, as mandated by section 18–8–406, is clearly identified in count three of the indictment.

*People v. Beruman*, 638 P.2d 789 (Colo. 1982), is not to the contrary. In *Beruman* we held an indictment brought under section 18–8–405(1)(a), 8B C.R.S. (1973) (making it a crime for a public servant to knowingly, arbitrarily, and capriciously refrain from performing "a duty imposed by law"), insufficient because an indictment under section 18–8–405 must "set out the source of the duty imposed by law which the defendant failed to perform in addition to the specification of the facts alleged to constitute the failure of performance." *Id.* at 794. The indictment in *Beruman* failed to set forth the positive statutory duty the defendant was alleged to have breached. *Id.* However, here the indictment clearly stated the duty the defendant was alleged to have breached—the duty not to make and issue false official certificates.

Defendant next argues that count three is insufficient because it fails to adequately identify the specific false statement deemed to violate section 18–8–406, 8B C.R.S. (1986). Where a statute defines an offense in general terms, the indictment must allege the acts and conduct of the defendant which are deemed to have violated the statute. *People v. Zupancic*, 192 Colo. 231, 235, 557 P.2d 1195, 1197–98 (Colo.1976). The offense of issuing a false certificate is such an offense. *Cf. People v. Broncucia*, 189 Colo. 334, 336–37, 540 P.2d 1101, 1103 (1975), *cert. denied*, 431 U.S. 937, 97 S.Ct. 2647, 53 L.Ed.2d 254 (1977) (perjury indictment failed to charge an offense because verbatim partial transcript of defendant's actual testimony contained no averment of fact demonstrating the falsity of the testimony on which the charge was based).

Count three identifies the false statements as the statements in the certificate pertaining to the position and authority of

Perko. The certificate states that "Perko is a law enforcement deputy ... authorized to carry a firearm in connection with his official duties. Deputy Perko is authorized to carry and use personally owned firearms in the performance of his official duties...." These two sentences, concerning the position and authority of Perko, are adequately described by count three of the indictment.

■■■ The defendant also argues that the count is insufficient in that it fails to identify the weapons and the restrictions which apply to the weapons. Defendant's argument is without merit. Although the identity of the weapons and the restrictions applying to them are relevant facts,[2] neither constitute an element of the crime charged. As noted above, appropriate analysis examines whether the crime is adequately described to enable the defendant to defend against the charge, and plead the indictment as a bar to subsequent proceedings. Count three meets this standard; fundamental fairness does not require an indictment to set forth all the relevant facts in great detail.

■■■ Finally, defendant argues that count three is insufficient in that it fails to identify the official certificate or official written instrument referred to in the charge. We disagree. It clearly identifies the certificate at issue as the one: (1) made on or about February 8, 1990; (2) on the Pueblo County Sheriff's official stationery; (3) containing a statement concerning the position and authority of Perko; (4) a certificate for Perko to obtain federally restricted assault weapons; and (5) being submitted to the Director of Alcohol, Tobacco and Firearms, a federal agency. No more is required.

Accordingly, we reject defendant's arguments that count three of the indictment failed to charge an offense.

### IV

■■■ Finally, the defendant argues that the trial court erred in holding that the

defendant was bound by departmental policies pertaining to the duties of deputies and the authorization of such deputies to acquire and use weapons in their duties. In effect, the defendant's position is that the certification operated to "deputize" Perko overriding departmental policies to the contrary. Specifically, the defendant objects to the trial court's refusal to give two tendered instructions. Tendered instruction 5 stated:

> The sheriff of a county has the exclusive unlimited power and authority to appoint and to terminate the employment of deputy sheriffs, whether such deputies be full deputies or reserve deputies. The sheriff further has the exclusive and unlimited power and authority to specify and define the duties of the deputies and reserve deputies which he may appoint. The sheriff's power and authority over deputies and their duties cannot be limited by departmental policies or procedures adopted by the sheriff for the administration of his department.

Tendered instruction 6 stated:

> A county sheriff has the exclusive and unlimited power and authority to designate the type of firearms which may be acquired or used by deputy sheriffs or by reserve deputy sheriffs in connection with those duties which the sheriff may assign to such deputies or reserve deputies. The power or authority cannot be limited by departmental policies adopted for the administration of the sheriff's department.

The trial court found that the tendered instructions were incomplete and inaccurate statements of the authority of a sheriff. This conclusion is correct. Section 30–10–510, 12A C.R.S. (1986), provides:

> Every appointment of an undersheriff or of a deputy sheriff, and every revocation of such appointment, shall be in writing, under the hand of the sheriff, and shall be filed in the office of the county clerk and recorder; but this section shall not extend to any person who may be depu-

---

**2.** Absent the federal restrictions on sale of Steyr AUG semi-automatic rifles there would be no

need for the defendant to have made the certification.

tized by any sheriff or undersheriff to do a particular act only.

The "exclusive and unlimited power and authority" which the tendered instructions allege belong to the sheriff were incomplete and inaccurate statements of the law, and were properly refused. *People v. Alexander*, 663 P.2d 1024, 1031–32 (Colo. 1983).

Judgment affirmed.